## WHITLEY *v.* HUDSON, survivor, *et al.*

1. A surviving member of a partnership dissolved by death is not the " personal representative " of the deceased member, and consequently the defendant, in an action brought by the surviving partner as such, is not by the Civil Code, § 5269, par. 1, rendered incompetent to testify as to a transaction between such defendant and the deceased partner.
2. Nor does paragraph 2 of that section render the defendant in such an action incompetent to testify concerning such a transaction.

3. If a party defendant to an action upon a contract, on the face of which the fact of suretyship does not appear, by his answer alleges that he signed the paper as a surety, and is by an erroneous ruling denied the right to establish before judgment the fact thus set up, he is entitled to a new trial ; and granting the same would not, in legal contemplation, violate that portion of section 2984 of the Civil Code which declares that in such a case the creditor is not to be "delayed in his remedy by such collateral issue between the principal and his surety." The delay here referred to is that which would arise from the fault or negligence of the alleged surety.

Argued January 4,—Decided February 6, 1902.

Complaint. Before Judge Littlejohn. Sumter superior court. July 23, 1901.

*Allen Fort & Son* and *C. R. Winchester,* for plaintiff in error.
*Shipp & Sheppard* and *J. H. Lumpkin,* contra.

LUMPKIN, P. J. An action upon a promissory note was brought in the court below by W. B. Hudson, as surviving partner of L. N. Hudson & Brother, against Mrs. S. E. Clegg and C. R. Whitley. The latter signed the note apparently as principal. Mrs. Clegg filed a plea of non est factum. Whitley, among other things, set up that he was only a surety upon the note sued on, and prayed that in the event of a recovery by the plaintiff, the fact of suretyship be established by the judgment. There was a verdict for the plaintiff against both defendants. Each made a separate motion for a new trial, and the bill of exceptions now before us was sued out by Whitley, alleging error in the overruling of his motion. An examination of the record discloses that many interesting legal questions are involved in the controversy among the several parties to the present litigation. We shall, however, as we are bound to do, confine ourselves strictly to the points actually made and presented in Whitley's motion for a new trial and insisted upon in the briefs filed in his behalf. While the trial was in progress, his counsel offered to prove by him as a witness that he signed the note sued on at the instance of the deceased L. N. Hudson; that the latter refused to make the loan evidenced by the note, unless Whitley would sign the same as surety; and that Whitley's true relation to the paper was that of surety only. This testimony was objected to by counsel for the plaintiff, and ruled out, on the ground that, L. N. Hudson being dead, Whitley was incompetent to testify to any transaction between himself and the deceased. Unless Whitley was rendered incompetent by some provision of section 5269 of the

Civil Code, the ruling with which we are now dealing was errone-
ous. It was insisted in the argument here that Whitley was dis-
qualified, under paragraphs 1 and 2 of this section. We will con-
sider the same separately in their application to the case before us.

1. The first reads as follows: " Where any suit is instituted or
defended by a person insane at time of trial, or by an indorsee,
assignee, transferee, or by the personal representative of a deceased
person, the opposite party shall not be admitted to testify in his
own favor against the insane or deceased person, as to transactions
or communications with such insane or deceased person." So the
question really is, was the present action instituted by " the personal
representative " of the deceased L. N. Hudson ? We are quite clear
that it was not. The case of a widow who is entitled by law to
take possession of her deceased husband's estate, when he dies with-
out lineal descendants and owing no debts, or when the husband
dies leaving debts and she pays them, is not at all analogous. In
such a case this court, in *Johnson* v. *Champion*, 88 *Ga.* 527, held
that the widow should be "treated as the personal representative
of the deceased." This ruling was followed in *Killian* v. *Banks*,
103 *Ga.* 245. These decisions were based upon the idea that the
widow was entitled to administer for the benefit of the only person
concerned, to wit, herself, all the property which belonged to the
estate of her deceased husband. While a surviving partner has, as
such, the right to administer, for the benefit of the partnership and
its creditors, all of the partnership assets, he has nothing whatever
to do with the administration of the individual estate of his deceased
partner, and can not therefore, in any fair sense, be regarded as
the personal representative of that estate. We therefore hold that
nothing contained in paragraph 1 of the code section quoted above
rendered Whitley incompetent as a witness to prove the facts to
which he offered to testify.

2. Was he excluded from so testifying by the second paragraph
of this section ? It is in the following words: " Where any suit is
instituted or defended by partners, persons jointly liable, or inter-
ested, the opposite party shall not be admitted to testify in his own
favor as to transactions or communications solely with an insane
or deceased partner, or person jointly liable or interested." The
present suit was not instituted by " partners." Had it been brought
in the name of L. N. Hudson & Brother as a firm, it would have

been subject to abatement upon a plea showing that L. N. Hudson
had died before the filing of the petition. In bringing the suit, W.
B. Hudson .exercised his legal right to bring the same as survivor.
It was the only way in which he could appear as a plaintiff seek-
ing the recovery of a debt due to the dissolved partnership. Since,
then, the action does not fall within the terms of this paragraph, it
contains nothing depriving Whitley of the right to testify notwith-
standing the death of L. N. Hudson. It is perhaps true that the
spirit of both these paragraphs would exclude Whitley as a wit-
ness. With this, however, we have nothing to do. It is the set-
tled policy of this court to obey the legislative mandate embraced
in section 5270 of the Civil Code, that "there shall be no other
exceptions allowed under the foregoing paragraphs," and therefore
in construing the various paragraphs of section 5269 we must take
them literally and not endeavor by construction to give them mean-
ings which we may think they ought to have.

3. Section 2984 of the Civil Code reads as follows: "If the fact
of suretyship does not appear on the face of the contract, it may be
proved by parol, either before or after the judgment (the creditor
not being delayed in his remedy by such collateral issue between
the principal and his surety), if before judgment the surety shall
give notice to the principal of his intention to make such proof."
Counsel for Whitley offered to prove by P. C. Clegg (the husband
of Mrs. Clegg and her agent in the transaction which resulted in
the giving of the note sued on), that when Whitley signed the same
it was understood between the witness and Whitley that the latter
was signing merely as a surety. The rejection of this testimony,
on objection thereto by Mrs. Clegg, is assigned as error. As will
have been seen from the language of the code section last quoted,
Whitley had a statutory right to prove by parol, before judgment,
the fact of his suretyship. How was he to exercise this right in
any other manner than that employed in the present instance? It
is true that under this section the creditor is not to be delayed by
any collateral issue "between the principal and his surety;" but
allowing the introduction of the testimony offered would not have
delayed the plaintiff Hudson. A verdict would have been reached
at the same term, even had the testimony of Clegg been allowed.
It will not do to say that granting a new trial will result in delay
to Hudson, and thus violate that portion of the statute which de-

clares that the creditor must not be delayed; for thus holding would be to deprive Whitley of a clear legal right which he lost on account of an erroneous ruling made while the trial was in progress. In other words, as he had a statutory right to prove the fact of his suretyship before the plaintiff obtained judgment, and as he sought in a perfectly proper manner to exercise this right, and the same was denied him, he is entitled to a new trial. Had the error now under consideration been the only one committed at the trial, the inconvenience resulting therefrom to Hudson would be a necessary consequence of this somewhat singular provision of our law, which allows defendants to inject into an action brought against them an intervention in which the plaintiff has no concern.

If, at the time Whitley offered to make this proof, allowing it would, for any reason, have delayed Hudson in the prosecution of his remedy, the rule would be different. A defendant, desiring to have the fact of suretyship established by the judgment to be rendered in favor of a plaintiff against himself and another, can not, if in laches or because of neglect which would result in delay to the plaintiff, avail himself of the statutory right now under discussion; otherwise, as in the present instance, he should be permitted to introduce any relevant evidence tending to establish the right in question. The case of *Chamblee* v. *Davie,* 88 *Ga.* 205, is relied on as authority for the proposition that as granting a new trial to one occupying the position of Whitley in the present case would necessarily result in delay to the plaintiff, it should, for this reason, be refused. In that case complaint was made of a charge on the ground that it nowhere gave the jury any opportunity to find that George L. Chamblee, who claimed to be a surety, did in fact sustain that relation to the paper sued on. This point was held to be not well taken, because the judge, in his instructions to the jury as to the form of their verdict, so shaped the same that they might have found that George L. Chamblee was in fact a surety, if they had seen proper to do so. Hence it was ruled that "the objection to the charge of the court as to the form of the verdict is not supported by the charge as set out in the motion for a new trial." This ruling, as will be readily seen, dealt with the main and controlling point in the case with regard to the question of suretyship. If the third headnote in the case cited is capable of the construction placed upon it, as above indicated, by the counsel for the defend-

ant in error, it would seem to be obiter. It is quite clear that Chamblee was not entitled to a new trial, but not so clear that he would not have been if the charge of the court of which he complained had really had the vice attributed to it. The decision in his case was manifestly right, but if Chamblee had made it appear that in the trial below he was denied a substantial right, he ought not to have been denied another hearing merely because granting it to him would have incidentally delayed Davie, the plaintiff. If the decision in *Chamblee* v. *Davie* really rules to the contrary, it is not, in this respect, binding or authoritative, and will not be followed. On the whole we think Whitley is entitled to a new trial. He filed an answer which the law permitted him to file, and the judge erroneously refused to allow him to establish it by competent testimony. *Judgment reversed. All the Justices concurring.*